[Cite as *State v. Paul*, 2025-Ohio-4907.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

SAMUEL PAUL, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 10-25-07

OPINION AND
JUDGMENT ENTRY

Appeal from Mercer County Common Pleas Court
Criminal Division
Trial Court No. 24-CRM-117

Judgment Affirmed

Date of Decision: October 27, 2025

APPEARANCES:

    *Christopher Bazeley* for Appellant

    *Peter Galyardt* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Samuel Paul ("Paul"), appeals the March 10, 2025 judgment of conviction and sentence entered against him in the Mercer County Court of Common Pleas, following Paul's plea of guilty to two counts of felonious assault. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on November 4, 2024, when a felony complaint and accompanying affidavit were filed in the Mercer County Common Pleas Court. In that complaint, Paul was charged with one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2). On that same date, an initial appearance on the felony complaint was held.

{¶3} On November 12, 2024, a preliminary hearing was scheduled. However, Paul waived his right to the preliminary hearing, and the trial court ordered that the case be bound over to the next grand jury session.

{¶4} On November 21, 2024, a Mercer County grand jury returned a six-count indictment against Paul, charging him as follows: Count 1 – Attempted Murder, a first-degree felony in violation of R.C. 2923.02 and R.C. 2903.02(A); Count 2 – Attempted Murder, a first-degree felony in violation of R.C. 2923.02 and R.C. 2903.02(A); Count 3 – Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1); Count 4 – Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1); Count 5 – Felonious Assault, a second-degree

felony in violation of R.C. 2903.11(A)(2); and Count 6 – Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(2).[1] Each count of the indictment also contained a firearm specification pursuant to R.C. 2941.145 and a firearm forfeiture specification.

{¶5} On November 22, 2024, an arraignment was held and Paul pled not guilty to all counts in the indictment.

{¶6} On January 31, 2025, the case was resolved with a negotiated plea of guilty. At that time, Paul pled guilty to Count 5 of the indictment, amended to strike the firearm specification, and pled guilty to Count 6 of the indictment, amended to strike the firearm and forfeiture specifications. Pursuant to the plea arrangement, the prosecution agreed to dismiss the remaining counts of the indictment. The trial court accepted Paul's negotiated guilty pleas, and ordered a presentence investigation.

{¶7} On March 5, 2025, a sentencing hearing was held. The trial court sentenced Paul on Count 5 to an indefinite prison term of 5 years up to a potential maximum of 7.5 years, and on Count 6 to a definite prison term of 5 years. The trial court ordered that the prison terms were to be served consecutively. At the sentencing hearing, the trial court also ordered a civil assessment against Paul in the

---

[1] The record reflects that Counts 1, 3, and 5 related to one victim, and that Counts 2, 4, and 6 related to a second victim.

amount of $500.00 for court-appointed counsel fees.  On March 10, 2025, the trial court journalized its sentencing orders.

{¶8} On March 13, 2025, Paul filed the instant appeal.

*Factual Background*

{¶9} With regard to the crimes to which Paul pled guilty and was sentenced upon, the presentence investigation sets forth the following facts:

> On November 3, 2024, at around 1:30 a.m., Celina Police Officers were dispatched to 641 North Sugar Street in Celina, Mercer County, Ohio.  Upon his arrival, Ptl. David Powell, employed by the Celina Police Department, observed a male running towards Ptl. Justin Bruns, also employed by the Celina Police Department.  This male subject, later identified as [T.H.] was yelling "he's shot" multiple times.
>
> Ptl. Powell then located another male, later identified as [C.M.], lying in the grass, near the street, at the same address.  [C.M.] appeared to have a gunshot wound to his lower torso and was "covered in blood".  [T.H.] indicated that the defendant had "shot" [C.M.].  Ptl. Bruns made contact with the defendant, who was at the residence, and detained him.  The defendant confirmed that he had shot [C.M.].
>
> As Ptl. Powell was rendering medical aid to [C.M.], [T.H.] advised that he and [C.M.] were friends and that [T.H.] and his wife, [S.H.] drove [C.M.] to 641 North Sugar Street to retrieve items for his children.  Ptl. Powell found that [S.H.] and [C.M.]'s two (2) young children ([J.M.], age 6 years, and [J.M.2], age 3 years) were in a vehicle parked on the street, in front of the residence.  [T.H.] advised that as [C.M.] was exiting the residence, he was shot, "in the back", by the defendant.  [T.H.] reported that he witnessed the incident and that the defendant [*sic*] was shot just outside the front door, on the porch, while * * * holding his daughter, [J.M.2].  [C.M.] was treated and transported [*sic*] the Mercer Health Emergency Room by Celina Fire Department Personnel.  He was then care flighted to Miami Valley Hospital for further treatment.  Medical records indicated that

[C.M.] suffered a gunshot wound to the right side of his lower back, with the bullet causing an exit wound to [C.M.]'s upper left thigh.

At the residence, Celina Police Officers located a .380 caliber shell casing, on the front porch, and a Bryco Arms Model Jennings T380 handgun, serial number 1430324, chambered in .380 caliber, inside the house.

Sgt. Patrick Crosby, employed by the Celina Police Department, read the defendant his Mirranda [*sic*] Rights, to which the defendant stated that he understood, and then interviewed him at the Celina Police Department. During the conversation, the defendant advised that [C.M.], along with his wife, [S.M.] lived with him at 641 North Sugar Street. The defendant stated that in the days prior, [C.M.] had been arguing with him and that he threatened to physically assault the defendant. The defendant stated that earlier on this date, [C.M.] came into the defendant's residence and woke him. The defendant advised that [C.M.] began threatening him physically and then shoved the defendant. The defendant stated that [C.M.] was on the front porch of the residence at one point and attempting to push his way back into the house, when the defendant felt fear for his own welfare. He advised that he shot [C.M.] in order to "protect" himself. At the conclusion of the interview, the defendant was arrested and transported to the Mercer County Detention Center without further incident.

*Assignments of Error Raised on Appeal*

**First Assignment of Error**

**The trial court violated Paul's constitutional rights by requiring him to appear remotely by video without complying with Crim.R. 43.**

**Second Assignment of Error**

**The trial court's decision finding that Paul failed to overcome the R.C. 2929.13(D) presumption that an individual must serve a prison sentence is contrary to law.**

Case No. 10-25-07

**Third Assignment of Error**

**The trial court plainly erred when it imposed repayment of assigned counsel fees as costs.**

*Analysis of Assignments of Error*

*First Assignment of Error*

{¶10} In the first assignment of error, Paul asserts that the trial court erred in holding the bulk of the proceedings in the case without Paul having been physically present in the courtroom.

{¶11} With respect to this assignment of error, the record reflects that Paul appeared by remote contemporaneous video transmission from the Mercer County Adult Detention Center at the November 4, 2024 initial appearance on the felony complaint, the November 12, 2024 waiver of preliminary hearing, the November 22, 2024 arraignment on the indictment, a December 11, 2024 pretrial conference at which time he waived his right to a speedy trial, and at the January 31, 2025 change of plea hearing. On February 7, 2025, Paul filed a motion requesting to appear in person at the upcoming sentencing hearing and, at the March 5, 2025 sentencing hearing, Paul was present in the courtroom during the sentencing proceeding.

{¶12} It appears from the record that the trial judge and counsel for both parties were present in the courtroom during all proceedings but that, as noted, Paul participated in those proceedings via a live audio-video link from a location at the

-6-

county detention center. The record also reflects that Paul did not waive, in writing or in open court, his right to be physically present in the courtroom prior to the trial court having Paul appear remotely at the hearings at issue. While no objection to Paul's remote appearance at those hearings was lodged in the trial court, Paul now contends that holding those hearings via a video conferencing method, without first obtaining a waiver from him, violated Crim.R. 43(A) and his constitutional right to be physically present at every stage of his criminal proceeding.

{¶13} It is axiomatic that a criminal defendant has a fundamental right to be present at all critical stages of his or her criminal trial. See, *e.g.*, *State v. Hale,* 2008-Ohio-3426, ¶ 100. See, also, Section 10, Article I, Ohio Constitution.

{¶14} In Ohio, Crim.R. 43 governs the presence of a criminal defendant in the courtroom, and provides in relevant part:

(A) Defendant's Presence.

(1) Except as provided in Crim. Rule 10 and divisions (A)(2) and (A)(3) of this rule, the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict. A corporation may appear by counsel for all purposes.

(2) Notwithstanding the provisions of division (A)(1) of this rule, the court may permit the remote presence and participation of a defendant if all of the following apply:

(a) The court gives appropriate notice to all the parties;

(b) The video arrangements allow the defendant to hear and see the proceeding;

(c) The video arrangements allow the defendant to speak, and to be seen and heard by the court and all parties;

(d) The court makes provision to allow for private communication between the defendant and counsel. The court shall inform the defendant on the record how to, at any time, communicate privately with counsel. Counsel shall be afforded the opportunity to speak to defendant privately. Counsel shall be permitted to appear with defendant at the remote location if requested.

(e) The proceeding may involve sworn testimony that is subject to cross examination, if counsel is present, participates and consents.

(3) A court may conduct a trial by jury, a trial to the court, a sentencing proceeding or other substantive proceeding with a defendant appearing remotely if the defendant has waived in writing or orally on the record the right to be physically present and agreed to appear by remote presence in accordance with division (A)(2) of this rule subject to the approval of the court.

{¶15} "An accused's absence, however, does not necessarily result in prejudicial or constitutional error" because "'[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *State v. Davis*, 2008-Ohio-2, at ¶ 90, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934), overruled on other grounds, *Duncan v. Louisiana*, 391 U.S. 145 (1968), and *Malloy v. Hogan*, 378 U.S. 1, 2 (1964). The ultimate question is whether the presence of the defendant in the courtroom has a "reasonably substantial" relationship to "the fullness of his

opportunity to defend against the charge." *Hale, supra,* at ¶ 100*,* quoting *Snyder v. Massachusetts*, *supra*.

**{¶16}** Thus, a defendant's absence from the courtroom in violation of Crim. R. 43(A), although improper, may constitute harmless error where no prejudice results. *State v. Williams*, 6 Ohio St.3d 281, 286-87 (1983). A harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights" and, as such, "shall be disregarded." Crim.R. 52(A).

**{¶17}** In the instant case, as no objection to the use of a remote contemporaneous video transmission for Paul's appearance at the hearings was lodged in the trial court, we review the trial court proceedings for plain error.

As this Court explained in *State v. Taflinger*, 2018-Ohio-456 (3d Dist.):

"In order to find plain error under Crim.R. 52(B), there must be an error, the error must be an 'obvious' defect in the trial proceedings, and the error must have affected 'substantial rights.'" *State v. Bowsher*, 3d Dist. Union No. 14–07–32, 2009–Ohio–6524, ¶ 12, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "The standard for plain error is whether, but for the error, the outcome of the proceeding clearly would have been otherwise." *State v. Hornbeck*, 155 Ohio App.3d 571, 2003–Ohio–6897, 802 N.E.2d 184, ¶ 16 (2d Dist.), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error is taken "only to 'prevent a manifest miscarriage of justice.'" *State v. Davis*, 3d Dist. Seneca No. 13–16–30, 2017–Ohio–2916, ¶ 23, quoting *Long*, *supra*, at paragraph three of the syllabus.

*Id*., at ¶ 17.

**{¶18}** Upon a review of the record and the applicable law, we agree with Paul that the trial court did fail to comply with Crim.R. 43 in this case. However,

for the reasons that follow, we find that such error was harmless and does not amount to plain error.

{¶19} Specifically, a thorough review of the record leads us to conclude that, notwithstanding the lack of a specific waiver of physical presence from Paul pursuant to Crim.R. 43(A)(3), Paul's rights were nonetheless adequately protected at the hearings where he appeared remotely.

{¶20} At all hearings, Paul was represented by counsel, with whom it appears that Paul was able to privately confer prior to proceeding with matters on the record. Paul does not allege that his counsel's representation was defective in any way, nor does Paul claim that additional, or more direct, access to his attorney during the hearings would have changed the outcome of the proceedings at issue. Neither Paul nor his counsel indicated any hesitation, much less objection, to proceeding via a live audio-video transmission, and there is nothing in the record to suggest that Paul was unable to view, hear, or otherwise understand anything said on the record by the trial court or attorneys. The record also reflects that Paul was able to be heard by the participants in the courtroom during the proceedings at issue. In particular, during the change of plea hearing, we note that Paul repeatedly indicated that he understood the information being conveyed to him by the trial court, and Paul appropriately answered all questions posed to him by the trial court. The dictates of Crim.R. 11(C) were followed by the trial court at the change of plea hearing, prior to the trial court accepting Paul's guilty pleas.

**{¶21}** On those facts, we find that a fair and just hearing at the time of the proceedings at issue was not in any way thwarted by Paul's physical absence from the courtroom, and that his rights were sufficiently protected throughout those proceedings. We therefore conclude that any error with regard to Paul's appearance and participation via the live audio-video feed was harmless and that his physical absence from the courtroom in this case does not amount to plain error. While we have concluded that the defendant here was not prejudiced by the trial court's noncompliance with Crim.R. 43, we note that our finding in that respect is strictly limited to the facts of this specific case. To be very clear, the correct and appropriate practice in any criminal case is full compliance with the dictates of Crim.R. 43(A).

**{¶22}** The first assignment of error is overruled.

*Second Assignment of Error*

**{¶23}** In the second assignment of error, Paul claims that the trial court's sentence is contrary to law because the record demonstrates that he was amenable to community control and, therefore, the trial court erred in finding that the presumption of a prison term was not overcome under R.C. 2929.13(D)(2).

**{¶24}** The standard of review applicable to this sentence-related claim is whether the sentence is clearly and convincingly contrary to law. *State v. Marcum*, 2016-Ohio-1002; R.C. 2953.08. With regard to sentencing-review generally, the Supreme Court of Ohio has limited that review by holding that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or

vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones,* 2020-Ohio-6729, ¶ 39. Additionally, a trial court has full discretion to impose any sentence within the statutory range. *State v. Johnson*, 2021-Ohio-1768, ¶ 9 (3d Dist). "A sentence imposed within the statutory range is not contrary to law as long as the trial court considered the purposes and principles of felony sentencing contained in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12. *Id*., citing *State v. Dorsey*, 2021-Ohio-76, ¶ 15 (2d Dist.).

{¶25} As to the specific claim raised here, Division (D) of R.C. 2929.13 provides in relevant part:

> (1) [F]or a felony of the * * * second degree * * *, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code. * * *
>
> (2) Notwithstanding the presumption established under division (D)(1) of this section * * *, the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term on an offender for a felony of the * * * second degree * * * for which a presumption in favor of a prison term is specified as being applicable if it makes both of the following findings:
>
> (a) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.

(b) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.

{¶26} A trial court must make both of the findings under R.C. 2929.13(D)(2) in order to overcome the presumption of a prison sentence. *State v. Mathis*, 2006-Ohio-855, paragraph one of the syllabus. However, "[n]o findings are required to impose the prison term under R.C. 2929.13(D)(1)." *State v. Searles*, 2020-Ohio-973, ¶ 4 (3d Dist.). Additionally, when sentencing a defendant, a trial court is required to consider the purposes and principles of sentencing as set forth in R.C. 2929.11 and the statutory factors set forth in R.C. 2929.12. *Id.*, at ¶ 5. Nevertheless, neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record. *State v. Jones*, *supra*, at ¶ 20, citing *State v. Wilson*, 2011-Ohio-2669, ¶ 31; *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Therefore, although the trial court must consider the factors, the court is not required to discuss its conclusions based upon the consideration given. *Searles* at ¶ 5, citing *State v. Vanmeter*, 2018-Ohio-3528, ¶ 11 (3d Dist.).

{¶27} In reviewing the sentence imposed in the instant case, we note that the trial court followed the presumption in favor of a prison term and imposed a mid-range prison term for each of Paul's second-degree felony convictions. While the

trial court was not required to set forth any reasons as to whether community control sanctions were or were not appropriate, the trial court specifically found at the sentencing hearing that the presumption for prison was not overcome, after noting the seriousness of the primary victim's physical injuries and the circumstances under which Paul committed the crimes at issue. The record also reflects that the trial court considered the overriding purposes of felony sentencing set forth in R.C. 2929.11, and applied the relevant sentencing factors set forth in R.C. 2929.12 to the case.

{¶28} Paul was 49 years of age at the time of sentencing, with no prior felony record. In mitigation of sentence, Paul asserted that he shot at the victims in self-defense. On those bases, Paul argues that the trial court should have found that the presumption for prison was overcome. However, the presentence investigation reflects that Paul did have several prior misdemeanor convictions. More importantly, the facts before the trial court reflected that Paul shot the first victim in the back at close range, while that victim was leaving Paul's home and carrying a small child, and that Paul narrowly missed shooting the second victim who was in the immediate vicinity when Paul opened fire.

{¶29} In sum, based on the record before us, the trial court's decision to sentence Paul to a presumed prison sentence is not clearly and convincingly contrary to law.

{¶30} The second assignment of error is overruled.

*Third Assignment of Error*

**{¶31}** In the third assignment of error, Paul asserts that the trial court erred in ordering that court-appointed counsel fees be paid by Paul. Specifically, Paul argues that the trial court improperly assessed counsel fees as costs in the case.

**{¶32}** R.C. 2941.51 governs counsel for indigents in criminal cases. In relevant part, R.C. 2941.51(A) provides, "[c]ounsel appointed to a case * * * shall be paid for their services by the county the compensation and expenses that the trial court approves." R.C. 2941.51(D) then provides:

> The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the costs of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay. * * *

**{¶33}** In *State v. Taylor*, 2020-Ohio-6786, the Supreme Court of Ohio considered the issue of whether court-appointed counsel fees may be imposed as part of a defendant's sentence and addressed what is required of a trial court under R.C. 2941.51(D) when ordering that a convicted criminal defendant reimburse a county for the cost of court-appointed counsel. In so doing, the Ohio Supreme Court noted that R.C. 2941.51 plainly states that court-appointed counsel fees shall not be assessed as costs. *Taylor*, *supra*, at ¶ 34. The Supreme Court of Ohio then held that "while such fees may be assessed at the sentencing hearing, they cannot be included as a part of the offender's sentence." *Taylor*, at ¶ 37. As a point of clarification, the

-15-

Supreme Court then held that "*if* the assessment of the fees is included in the sentencing entry, the court must note that the assessment of the court-appointed counsel fees is a civil assessment and is not part of the defendant's sentence." *Id.* (Emphasis added.)

{¶34} With regard to Paul's claim in the instant case, the record reflects that, at the March 5, 2025 sentencing hearing, the trial court specifically ordered a civil assessment against Paul in the amount of $500.00 for court-appointed counsel fees. The trial court ordered that the $500.00 assessment be reduced to civil judgment, after finding that Paul would have the future ability to pay that judgment.

{¶35} The March 10, 2025 judgment entry of sentencing then reflects the following order with regard to the court-appointed counsel fees:

**CIVIL ASSESSMENT**

Court costs are assessed against the Defendant. Assigned Counsel Fees in the amount of $500.00 are assessed against the Defendant. The Court having found that Defendant has, or reasonably may be expected to have, the means to meet all of the costs of the services rendered to the Defendant.

(Docket No. 135).

{¶36} Thus, contrary to Paul's argument on appeal, the record indicates that the trial court did not improperly assess the appointed-counsel fees as costs in the case but, rather, properly ordered that the appointed-counsel fees were being assessed against Paul as a civil assessment.

{¶37} The third assignment of error is overruled.

*Conclusion*

**{¶38}** Having found no prejudicial error in the particulars assigned and argued by the defendant-appellant, Samuel Paul, the judgment of conviction and sentence entered in the Mercer County Court of Common Pleas is affirmed.

***Judgment affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 10-25-07

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm

-18-